In re KEARNEY et al.

(District Court, N. D. New York.  December 29, 1910.)

BANKRUPTCY (§ 156*)—ACTION AGAINST BANKRUPT—DEFENSE BY TRUSTEE.

While it is not necessarily the duty of a trustee in bankruptcy to follow the wishes of a majority in number and amount of the creditors in prosecuting or defending suits, when his judgment concurs with that of a great majority of the creditors who speak, all having the opportunity to speak, that it would be inadvisable to defend a pending suit against the bankrupt and not for the best interest of the estate, he is justified in refusing to defend; and it is not error for the referee, on application of the minority, to refuse to direct him to do so, unless such creditors will assume responsibility for the expense.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 240; Dec. Dig. § 156.*]

In the matter of William H. Kearney and others, comprising the firm of Kearney Bros., bankrupts.  Review of order of C. L. Stone, referee, refusing to direct the trustee to defend an action in replevin brought prior to the institution of proceedings in bankruptcy, and permitting a compromise whereby the plaintiff in such action is to retain the goods replevied and which were not reclaimed, and discontinue the action without costs.  Affirmed.

McGowan & Stolz, for trustee.

Tracy, Chapman & Tracy, for certain creditors.

RAY, District Judge.  Prior to the institution of the bankruptcy proceedings one Charles A. Shafer brought a replevin action in the Supreme Court of the state of New York to recover certain goods obtained from him by the bankrupt firm on materially false statements made in writing as to their financial condition.  The goods in question, of the value of $3,970, were actually replevied, and, no bond being given, the goods were turned over to Shafer.  After bankruptcy proceedings a meeting of creditors on due notice was called and held to determine whether the trustee should appear and defend said action, or allow Shafer to retain the goods and discontinue the action without costs.  At such meeting the trustee, who is a reputable attorney of standing, appeared in person and by Benj. Stoltz, his attorney.  Geo. D. Chapman, also a reputable attorney and representing certain creditors, and Chas. G. Irish, also a reputable attorney, representing another creditor, appear to oppose and opposed the proposed compromise.  Other creditors were present in person or by attorney.

The firm assets, as shown by the schedules made in May, 1910, are $16,150.29, and the liabilities $32,353.31.  The liabilities of the individual partners are greater than their assets.  Forty claims, representing a total of $17,766.69, voted in favor of the proposed compromise, and nine claims, representing $3,301.22, voted in opposition.  No question was raised as to the right of those voting to represent such claims and vote at the meeting.  It seems to be beyond all question that in their written statement made to Shafer March 1, 1910,

false statements on which he relied, presumptively so, at least, were made. The assets were placed at $30,791.44, and May 9th the firm placed them at $16,150.29. The liabilities were placed at $17,664.25, and May 9th following at $32,353.31. March 1, 1910, the firm in writing represented itself as solvent by some $13,000, while May 9, 1910, in writing it showed itself insolvent by some $16,000. This great change in less than two months from apparent and represented solvency to absolute and serious insolvency was not explained to the trustee or to the referee. It was not claimed that it grew out of misfortunes, or losses, or shrinkage in value.

The referee certifies that the attorney for the bankrupts stated at the meeting that the assets of the firm were much less, and the liabilities a great deal more, than set forth in the statement given Shafer. The referee also certifies that the creditors objecting to the compromise "refused to indemnify the estate for any expense the trustee might incur in defending said suit."

The question is whether a trustee shall defend such a suit under such conditions against his own judgment and against the wishes of a large majority in number and amount of those creditors who speak at all, something like one-fifth in number and amount of those speaking at all requesting that it be done. That the defense of such a suit would delay the settlement of the estate and the payment of dividends and result in considerable expense is apparent. Success in defending, under the facts appearing, would seem improbable. It is not necessarily the duty of the trustee to follow the wishes of a majority in number and amount of the creditors in prosecuting or defending suits. He is to exercise his own judgment, of course. But when his own judgment concurs with that of a great majority of all the creditors who speak, all having the opportunity to speak, and also with that of the referee or court in charge, it would seem plain that such judgment should control, and that the referee commits no error in authorizing or directing the compromise.

Section 55c of the bankruptcy act says:

"The creditor shall at each meeting take such steps as may be pertinent and necessary for the promotion of the best interests of the estate and the enforcement of this act." Act July 1, 1898, c. 541, 30 Stat. 559 (U. S. Comp. St. 1901, p. 3442).

Section 47 says:

"Trustees shall respectively * * * (2) collect and reduce to money the property of the estates for which they are trustees, under the direction of the court, and close up the estate as expeditiously as is compatible with the best interests of the parties in interest."

General Order 28 (89 Fed. xi, 32 C. C. A. xxviii) provides that:

"Whenever it may be deemed for the benefit of the estate of a bankrupt * * * to compound and settle any debts or other claims due or belonging to the estate of the bankrupt, the trustee * * * may file his petition therefor, and thereupon the court shall appoint a suitable time and place for the hearing thereof, notice of which shall be given as the court shall direct, so that all creditors and other persons interested may appear and show cause, if any they have, why an order should not be passed by the court upon the petition authorizing such act on the part of the trustee."

All this authorizes and provides for the course pursued in this matter. But unanimity of action on the part of the creditors is not suggested or demanded. The determining question is what action is for the best interests of the estate; that is, the creditors as a whole. Section 11 of the bankruptcy act, relating to suits by and against bankrupts, especially those pending at the time the bankruptcy proceedings are instituted, says (subdivision "b"):

"The court may order the trustee to enter his appearance and defend any pending suit against the bankrupt."

In relation to this provision Collier on Bankruptcy (7th Ed.) 221, says:

"The words here used are not the same as those of the former law, but their effect is similar. One option is with the trustee. He may or may not decide to defend, though, when in doubt, he should report at a meeting of creditors for instructions. The other is with the court. It may, but need not, order the trustee to intervene."

It cannot be that the court must direct the trustee to intervene and prosecute a pending suit or defend a pending suit, regardless of the merits and prospects of success; and it cannot be that a trustee must defend such a suit when the creditors are appealed to and four-fifths in number and amount vote against such action. See Traders' Bank v. Campbell, 14 Wall. 87, 20 L. Ed. 832; Reade v. Waterhouse, 52 N. Y. 587; In re Porter (D. C.) 109 Fed. 111. When there is a fair chance of success in the pending litigation, and its prosecution to judgment would benefit the estate by preventing the taking away of money or property, or by way of the recovery of money or property, or by way of the establishment of some important fact or question of law necessary to the efficient administration of the estate, and the amount involved directly or indirectly is substantially more than the probable cost of the litigation, it would be the plain duty of the trustee to defend or prosecute as the case may be. But here the evidence, so far as known, indicates probable and almost inevitable defeat, and both the trustee and his attorney, as well as the learned referee and a very large majority of the creditors, have united in virtually declaring the defense of the suit not wise or beneficial to the estate, and the proposed compromise and settlement wise and proper.

I discover no good reason for entertaining a different view. If the objecting creditors, or any of them, will fully indemnify the trustee for all costs and expenses incurred in defending the suit, and will come in and defend at their own cost, with the provision that, if successful in the defense, they shall be fully reimbursed from the recovery—that is, the value of the property taken in the replevin action, if held to have been wrongfully taken and its value is recovered—they may do so; and if within 10 days after service of a copy of the order herein they so elect in writing, and file a bond of indemnity with two sureties, approved by the referee, the order of the referee will be opened and reversed, and the trustee directed to defend; otherwise, the order of the referee is approved and affirmed.