In re W. T. GRANT COMPANY,
Bankrupt.

Bankruptcy No. 75 B 1735.

United States Bankruptcy Court,
S. D. New York.

May 1, 1981.

Weil, Gotshal & Manges, New York City, for Trustee.

Bader & Bader, White Plains, N. Y., for objectors.

Dennis R. Yeager, New York City, for Home Ins. Co.

Cleary, Gottlieb, Steen & Hamilton, New York City, for defendants.

Netter, Dowd & Alfieri, New York City, for John J. LaPlante.

## MEMORANDUM & ORDER

JOHN J. GALGAY, Bankruptcy Judge.

As part of the efforts to wind down the affairs of the W. T. Grant estate (Grant) and to effect the goal of liquidation under the Bankruptcy Act, "obtaining the best possible realization upon the available assets ... without undue waste by needless or fruitless litigation," *In re Blair*, 538 F.2d 849, 852 (9th Cir. 1976), Charles G. Rodman, as Trustee of Grant has applied to this Court for approval of a compromise and settlement of litigation against former offi-

cers and directors of Grant which is currently pending in the Supreme Court of the State of New York, New York County (the State Court Action). An additional defendant in that action and party to the settlement is The Home Insurance Company (Home), issuer of Grant's $5 million Directors and Officers Liability Policy (the Policy). Objections to this compromise were filed on March 26, 1981 by Bader and Bader, Esqs. on behalf of two named debenture holders and a class of unnamed holders of convertible subordinated debentures "holding an excess of $15,000,000 in face amount of 4¾% convertible subordinated debentures of W. T. Grant." On April 9, 1981 at a hearing on notice to all interested parties all objections to the settlement were withdrawn except those of the two named objectants, Morris Lewy as holder of $25,000 in face amount of Grant's 4¾% Convertible Subordinated Debentures, and Yetta Fieldstein as holder of $20,000 in face amount of Grant's 4% Convertible Subordinated Debentures. After review of the many supporting documents submitted by counsel to the Trustee, the testimony presented in open court, and the controlling law, this Court approves the compromise and settlement as a reasonable disposition of the underlying controversy in the best interest of both the estate and its creditors.

No detailed history of the Grant proceedings needs to be included for the instant decision. This Court has literally lived with this case for almost six years, and the facts surrounding the filing, the adjudication and the numerous settlements approved by this Court are readily available for those whose knowledge is less intimate. See *In re W. T. Grant Company*, 4 Bankr.Ct. Dec. 54 (S.D. N.Y.1977), aff'd S.D.N.Y.1977, Knapp, D. J., *aff'd* 578 F.2d 1372 (2d Cir. 1978) (Secured Suppliers Committee); *In re W. T. Grant Company*, January 18, 1978, 75 B 1735 (4¾% Sinking Fund Debentures); *In re W. T. Grant Company*, 4 Bankr.Ct. Dec. 597 (S.D. N.Y.1978) (Bank Claimants); and *In re W. T. Grant Company*, 4 B.R. 53 (S.D.N.Y.1980) (Approval of offer of compromise and settlement to holders of Convertible Subordinated Debentures). It is sufficient to note

that as of the date of adjudication, Grant owed in excess of $1 billion to thousands of claimants and creditors.

The compromise and settlement which is the subject of this application is an outgrowth of one of the two actions begun by the Trustee in April of 1978 against Grant's former officers and directors and Home. One case was commenced in the district court of the Southern District of New York, *Rodman as Trustee v. W. T. Grant Foundation*, and the other was the State Court Action which is the basis for this compromise. The federal court action was dismissed for failure of the Trustee's complaint to state a cause of action under the federal securities law. See *Rodman v. Grant Foundation*, 460 F.Supp. 1028 (S.D.N. Y.1978); *aff'd*, 608 F.2d 1028 (2d Cir. 1979).

The Trustee's complaint in the State Court Action alleged that the officers and directors of Grant had so mismanaged the affairs of the corporation from 1968 through 1975 that Grant itself was irreparably harmed. A list of all of the directors and officers named in the suit (Individual Defendants) was included in this record as Trustee's Exhibit 10.

In January 1979 two of those defendants, Clarence W. Spangle and E. Robert Kinney entered into a settlement agreement with the Trustee which required each defendant to pay $25,000 to the Trustee and to assign to him a portion of possible reimbursement rights under the Policy. (Trustee's Exhibit 11). This Court authorized and approved that agreement by its order of April 3, 1979.

On December 10, 1979, in response to dismissal motions by the Individual Defendants and the answer by Home asserting various affirmative defenses which had been filed on July 10, 1978 (Trustee's Exhibit 5) the Trustee served an amended complaint (Trustee's Exhibit 4), alleging that some or all of the Individual Defendants had (a) mismanaged Grant's credit operations (Cause of Action I); (b) failed to insure that Grant maintained adequate control over its merchandise inventory (Cause of Action II); (c) failed to improve Grant's

inadequate internal controls, management systems and financial reporting (Cause of Action III); (d) permitted the operation of so-called Administrative Income Accounts containing offbook debts owed to Grant (Cause of Action IV); (e) commenced and continued a massive store expansion program without adequate planning and budgeting (Cause of Action V); (f) failed to fulfill their duties as members of the Grant Audit Committee (Cause of Action VI); (g) negligently declared dividends (Cause of Action VII); (h) breached fiduciary duties owed to Grant by personally profiting from inside information (Cause of Action VIII); (i) wasted corporate assets by authorizing excessive compensation to certain directors (Cause of Action IX); and (j) breached their agreements to purchase Grant common stock (Cause of Action X). Additionally, the Amended Complaint asserted a cause of action against Home for recovery under the Policy covering the acts and omissions of the Individual Defendants on a theory that the corporation itself was a beneficiary under that policy (Cause of Action XI). In lieu of answering the Amended Complaint, the Individual Defendants moved for dismissal on the grounds that several of the causes of action were barred by the statute of limitations, and that other causes of action were not pleaded with the particularity required under CPLR 3024(a). (Trustee's Exhibit 12). On June 2, 1980 Judge Klein of the New York State Supreme Court dismissed three of the causes of action contained in the Amended Complaint to the extent that they alleged acts which occurred more than six years before the Trustee commenced the action, but otherwise denied the motion. (Trustee's Exhibit 13).

It is significant that throughout the litigation Home has denied that it has any liability under the Policy which will provide the funds for this compromise and settlement. On October 2, 1975, after Grant's filing of its petition but before commencement of the State Court Action, Home canceled any further coverage under the Policy. Additionally, on May 1, 1978 Home attempted to rescind the Policy claiming that material misrepresentations and omissions had been made by Grant and its authorized representatives to induce Home to issue the Policy. (Trustee's Exhibit 8). Home tendered a refund of the premiums which Grant had paid for the coverage, but the Trustee through his counsel, Weil, Gotshal & Manges, rejected any recission and returned the refund check. (Trustee's Exhibit 9).

It was only after the state court decision on the dismissal motion, the appointment of a single judge to handle all aspects of the case, and the entry of an order scheduling discovery, that the parties fruitfully explored the possibility of settlement. Those negotiations produced an agreement dated January 31, 1981 (Trustee's Exhibit 14) which this Court has been called upon to scrutinize and approve.

The Trustee proposes to settle all of his claims contained in the Amended Complaint against the Individual Defendants and Home. Home, in turn, will deposit $2,450,000 in an interest bearing escrow account on the effective date of the agreement in full settlement and discharge of any claims against it, by the Trustee and other persons, pursuant to the Policy. The money will be disbursed as follows:

1. $50,000 to the law firm of Cleary, Gottlieb, Steen and Hamilton (Cleary, Gottlieb) to pay for the legal fees incurred by the Individual Defendants in defending the State Court Action and a class action now pending before Judge Duffy in the District Court of the Southern District;

2. $600,000 to Cleary, Gottlieb as escrow agent for certain of the Individual Defendants who are parties to the class action mentioned above, in full satisfaction of any claims these defendants may have against Home;

3. $1,800,000 plus all interest which accrues on the escrow account to the Trustee.

Based on current interest rates, the Trustee has estimated that the estate will net $2,000,000 from this settlement.

As previously mentioned, two debenture holders object to the compromise on basically four grounds. First, in light of the face amount of the policy, $5 million, and the possible resources of the Individual Defendants, the amount of the proposed settlement is grossly inadequate. Second, the attorneys' fees are excessive when compared to the results achieved. Third, since one of the defendants is or was an officer of Morgan Guaranty Bank, there is a possible indemnity claim by that individual against a bank which is capable of responding to a large judgment. And finally, approval of this settlement may have an impact on an action currently pending in the New York Supreme Court, Westchester County in which debenture holders have directly sued both the bankrupt estate and its former officers and directors.

In spite of these objections the Trustee has applied to this Court for approval of this settlement of the estate's claims against its former officers and directors and their insurer, Home. Before granting such approval, in accord with applicable law, this Court must weigh certain factors in determining whether the compromise is actually in the best interests of the estate. The chief considerations are probability of success in the litigation, the complexity, expense, inconvenience and delay in such litigation and the interest of creditors. *Drexel v. Loomis*, 35 F.2d 800, 806 (8th Cir. 1929). *Accord Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968). After careful review of the thorough testimony presented at the hearing on April 9, 1981, and the numerous supporting documents submitted by the Trustee, this Court concludes that this compromise should be approved over the objections of the two debenture holders.

At the hearing the Trustee, through his counsel, clearly demonstrated that the probability of successful litigation against the insurance company and the former officers and directors had been carefully weighed. This Court was advised that the Individual Defendants have notified the Trustee that they will vigorously defend the State Court Action should this settlement not be authorized.

In any event, the case against these defendants would be both difficult and complex. Initially there is an unresolved dispute as to the correct choice of law, New York's or Delaware's. If New York law does apply, the standard for proving a breach of the duty of care owed by a director or officer is rather high under New York law, both statutory and case law. Section 717 of the New York Business Corporation Law, in its present form and in the form effective at the time the events at issue took place, requires directors to act "in good faith and with that degree of care which an ordinarily prudent person in a like position would use under similar circumstances." Therefore, whether there is a breach of duty by a director or officer becomes a question of fact which can be determined only after consideration of all the surrounding circumstances. See *Litwin v. Allen*, 25 N.Y.S.2d 667 (S.Ct.1940); *Cassidy v. Uhlmann*, 170 N.Y. 505, 63 N.E. 554 (1902).

An additional hurdle to any recovery is the "business judgment rule" which the Individual Defendants have claimed they will assert as a defense. As recently stated by the New York Court of Appeals, "[t]hat doctrine [the business judgment rule] bars judicial inquiry into actions of corporate directors taken in good faith and in the exercise of honest judgment in the lawful and legitimate furtherance of corporate purposes." *Auerbach v. Bennett*, 47 N.Y.2d 619, 629, 419 N.Y.S.2d 920, 393 N.E.2d 994 (1979). See also *Parkoff v. General Tel. & Electronics Corp.*, 74 App.Div.2d 762, 425 N.Y.S.2d 599 (1st Dept. 1980). As breach of the duty of care is a tort action, the Trustee would also have the burden of showing that the loss would have been avoided had the directors and officers performed their duties, and of quantifying that loss. *Barnes v. Andrews*, 298 F. 614 (S.D.N.Y. 1924). In order to assert that any of the Individual Defendants should be personally

liable for any judgment, as suggested by the objectants, the Trustee would additionally be required to prove that a director personally participated in a wrongful act. *Hyman v. Jewish Chronic Disease Hospital*, 21 A.D.2d 495, 251 N.Y.S.2d 818 (2d Dept. 1964).

As stated by the Trustee's attorneys, the defenses interposed by the Individual Defendants and Home cannot be classified as frivolous. The probability of the Trustee losing the litigation is at least as great as the probability of successfully prosecuting the litigation. Indeed, the probability of loss may be greater than the probability of success.

The State Court litigation will be both expensive and protracted. The Trustee has stated that extensive discovery would be required to prepare this case for trial. Trustee's Exhibit 2 lists approximately 20 pages of Rule 205 examinations and interviews and exhibits which would only serve as a base for further investigations. The Trustee's recommendation that this settlement be approved includes an assessment of the scope and expense of the discovery which is contemplated in light of the defenses already interposed and those anticipated. The Trustee's attorneys have estimated that the full prosecution of the State Court Action would consume approximately five years and that the actual trial would require months of court time. It is estimated that 40 to 45 witnesses would be called to testify at the trial and that the Trustee would be required to engage additional experts to assist in the prosecution. The Trustee's attorneys have projected that the cost would be at least $3,000,000 over and above the cost absorbed by the bankrupt estate to date.

The Policy, in the penal sum of $5 million, represents the most practical source of any recovery should the State Court Action prove successful. The Policy in paragraph 4(c) allows the Individual Defendants to recover from Home all of the costs including attorneys' fees which they incur in the defense of any claim against them for "Wrongful Acts." (Trustee's Exhibit 1). If their claim for attorneys' fees is sustained, then any recovery by the Trustee under the Policy would be substantially reduced by the costs of the defense interposed by the Individual Defendants in the State Court Action. By the terms of the policy, the claims for reimbursement would, at minimum, be on a parity with any judgment which the Trustee obtained against Home and would materially dilute any possible recovery.

From a practical standpoint, any recovery beyond the limits of the Policy would be confined to the personal assets of the Individual Defendants, provided that individual liability was established. The objectants claim that one of the Individual Defendants, DeWitt Peterkin, has a right of indemnification against the Morgan Guaranty Trust Company of New York. Trustee's Exhibit 17, a letter dated April 3, 1981 from Ogden N. Lewis of Davis Polk & Wardwell to the Trustee's attorneys disclaimed the existence of any such possible claim for reimbursement. No proof to the contrary was submitted by the objectants.

From all of the above it is clear that while the possibility of success in the State Court Action is dubious, the litigation promises to be complex, protracted and expensive.

Turning to the final factor, the interest of creditors, it is also clear to this Court that approval of this compromise and settlement is in the best interests of the estate and its creditors. As previously mentioned only two out of the thousands of Grant's creditors object to this settlement. Their claims, which are subordinated to certain bank debts, aggregate $45,000 out of the $1 billion of liabilities of the Grant estate. The Bank Claimants whose allowed claims aggregate $650 million, with approximately half remaining unpaid, support the Trustee's motion.

The objectors have claimed that the settlement is inadequate in light of the face amount of the Policy, $5 million. As aptly stated by the Court of Appeals of this circuit, "[t]he fact that a proposed settlement may only amount to a fraction of the poten-

tial recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 (2d Cir. 1974). The objectors have simply made claims in opposition to the settlement without providing any evidence to support those claims.

In general the position taken by the objectors is that by merely objecting, they are entitled to stop the settlement in its tracks, without demonstrating any factual basis for their objections, and to force the parties to expend large amounts of time, money and effort to answer their rhetorical questions, notwithstanding the copious discovery available from years of prior litigation and extensive pre-trial proceedings. To allow the objectors to disrupt the settlement on the basis of nothing more than their unsupported suppositions would completely thwart the settlement process.

*Id.* at 464.

Finally, the objectors claim that the approval of this compromise and settlement may have some effect on a pending direct action by debenture holders against the estate and its former officers and directors. This compromise settles only the claims which the Trustee may have against the Individual Defendants and Home. This Court can only decide matters which are properly before it, and cannot allow the *possible* ramifications of its actions on cases beyond its jurisdiction to inhibit the just settlement of controversies such as this one.

Therefore, as the record is devoid of any evidence that the Trustee has erred in his evaluation of the facts or the law applicable to the State Court Action, and as the estate will receive an immediate benefit, almost $2 million, this Court authorizes and approves the compromise and settlement as embodied in the Settlement Agreement.

Within 10 business days after the Effective date, as defined in the agreement, and upon delivery to Home and the Trustee of the releases required by paragraphs 8 and 9 of that agreement, Dennis Yeager as Escrow Agent shall disburse

(a) $50,000 to Cleary, Gottlieb as payment for legal fees incurred by the Individual Defendants in defense of the State Court Action and the Class Action;

(b) $600,000 to Cleary, Gottlieb as escrow agent for certain Individual Defendants who are parties to the Class Action;

(c) the balance of the fund to the Trustee in full settlement of the Trustee's claims against Home and the Individual Defendants.

It is so ordered.