In re HEISSINGER RESOURCES LTD.

Robert M. MAGILL, Trustee, Plaintiff,

v.

SPRINGFIELD MARINE BANK; the First National Bank of Springfield; Sledge Drilling Co.; Harris Mud & Chemical, Inc.; M & M Pump & Supply, Inc.; Franz K. Fleischli III, as representative of interest holders in oil wells, Defendants.

No. 85–3191.

United States District Court,
C.D. Illinois,
Springfield Division.

Nov. 24, 1986.

Eric L. Grenzebach and Donald Craven, Springfield, Ill., and Richard A. Stockenberg, St. Louis, Mo., for plaintiff.

John Squires, Franz K. Fleischli, III, Sorling, Northrup, Hanna, Cullin & Cochran, Stephen A. Tagge, of counsel, Springfield, Ill., for defendants.

## OPINION AND ORDER

MILLS, District Judge:

The law favors compromise.

Did the bankruptcy judge abuse his discretion in approving the settlement?

The short answer: *No.*

Here, we review the bankruptcy court's approval of a settlement proposed by the trustee in bankruptcy of Heissinger Resources, Ltd. (Heissinger), a company which operated oil wells in Clay and Brown Counties in Illinois.

Heissinger filed a petition in bankruptcy under Chapter 7 of the U.S. Bankruptcy Code on April 5, 1983. Both here and in the bankruptcy court, appellants claim to have interests in the oil wells and equipment that are separate from the property of the debtor.[1] Appellants claim that as parties to participation and operating agreements with the debtor, they acquired working interests in one or more of the oil wells covered by the trustee's complaint. Under the agreements, debtor was to operate the wells, sell appellants' shares, and forward their share of proceeds.

Appellee First National Bank of Springfield, which filed a proof of claim for $202,000, claims a secured interest in the debtor's equipment and accounts receivable with respect to debtor's wells. Appellee Springfield Marine Bank, which filed a proof of claim for $100,495.68, claims a secured interest in wells and undeveloped drilling sites in Clay County.

On November 14, 1984, the trustee filed an adversary proceeding seeking an order approving a settlement of these claims, and authorizing certain other actions. Franz K. Fleischli III, representing interest holders, filed an answer objecting to the complaint and appellants also filed objections. The bankruptcy court conducted hearings on those objections to the complaint but heard no evidence. On December 21, 1984, the bankruptcy court entered an order approving the agreement and authorizing the requested actions by the trustee.

The appellants filed notice of appeal challenging specific portions of the order.

### Settlement

The trustee's complaint—in relevant part—outlined a tentative agreement "to settle or partially settle" the claims of Springfield Marine Bank and First National Bank. The agreement provided that during the pendency of the proceeding, 50% of the net proceeds of debtor's well operations were to be paid to the interest holders of such wells, and the remaining 50% to the banks. The complaint further stated that negotiations were conducted by the representatives of the banks and interest owners of the wells, and that the settlement was regarded as favorable by the trustee, his attorney, the interest holders (represented by attorney Franz Fleischli), and attorneys representing each of the banks.[2] In addition, the trustee in his complaint sought to (a) sell undeveloped drilling sites, (b) continue to operate productive wells, (c) sell trustee's interest in or effect plugging of unproductive wells, and (d) sell machinery and equipment not in productive use.

### Order

Appellants challenge four provisions of the Bankruptcy Court's December 21 order. Those provisions authorize the trustee to: (1) continue to operate productive wells in consultation with the banks and Fleischli, as representative of the interest owners of the wells; (2) to sell well machinery and equipment not in productive use free and clear of all liens and encumbrances, with the liens and encumbrances of the First National Bank to attach to the proceeds of sale subject to the reasonable costs of administration; (3) to sell his right, title and interest in unproductive wells or such wells as the trustee shall deem appropriate in consultation with the banks and

---

1. Appellants are Richard A. Stockenberg, Janet A. Stockenberg, Mary Wild, Mary W. Springmeyer, Hilda Marshall, Raymond E. Linnenbrink, and Bessie O. Linnenbrink. Appellees are Trustee Robert M. Magill, First National Bank, Marine Bank of Springfield, and Franz K. Fleischli III.

2. Appellants argue that the interest holders, represented by Fleischli, did not favor the agreement as evidenced by their objection. Appellants represent that no agreement was reached except between the trustee's attorney and the banks themselves.

Fleischli; and (4) to pay from the gross proceeds of oil production, after paying operational and administrative expenses, the balance, to be divided with 50% to go to Fleischli (as representative of the interest owners) and 50% to the banks. According to the order, payments in accordance with the schedule are to continue until the amounts claimed by the banks and their respective proofs of claim (after deduction for proceeds pursuant to authorized sales) are retired.

### Appeal

In this appeal, appellants claim that the bankruptcy judge erred by failing to make findings of fact and conclusions of law. They also argue that the bankruptcy court abused its discretion in approving the settlement because there was no finding that the banks' interests attached to all of the wells and equipment. In addition, they complain that there was no finding that the banks' interests have priority. Further, they claim that only the banks and the attorney for the trustee approved the settlement agreement and that a conflict of interest existed between one of the banks and the attorney for the trustee. Appellants maintain the settlement agreement is not fair and equitable, and finally, that there was no finding that appellants' interests in the wells, proceeds, or equipment was subject to the debts of the debtor or administration expenses. They also contend that the bankruptcy court treated the proceeding as a reorganization rather than a liquidation.

The central issues before this Court reduce to these: (1) was the bankruptcy court required to make findings of fact and conclusions of law? And (2) did the bankruptcy judge abuse his discretion in approving the settlement?

### I.

█ First, we consider whether specific findings were required. Appellants claim that Bankruptcy Rule 7052, which incorporates Fed.R.Civ.P. 52, requires the bankruptcy judge to make specific findings of fact and conclusions of law. Appellees, on the other hand, maintain that Rule 52 does not apply because there was no trial upon the facts without a jury since appellants offered no evidence. Assuming that it does apply, they argue that oral findings and conclusions are sufficient.

We think it is unnecessary for this court to delineate the record that must be made in this liquidation bankruptcy compromise proceeding. *See In re Blair*, 538 F.2d 849 (9th Cir.1976) (per curiam). While standards have been set as to the required factual basis for court approval of settlements involving reorganizations, we note the different purposes of liquidation and reorganization proceedings and the role of a settlement in each. As explained by the Court in *In re Blair*, 538 F.2d at 852:

> The success or failure of a reorganization may hinge upon the very compromise at issue. A liquidation bankruptcy is a terminal affair. The bankrupt's financial affairs are beyond repair. Liquidation is to be accomplished as rapidly as possible consistent with obtaining the best possible realization upon the available assets and without undue waste by needless or fruitless litigation.

*In re Blair*, 538 F.2d 849 at 852.

In reorganization cases, the bankruptcy court is required to give the reviewing court some basis for distinguishing between "well-reasoned conclusions arrived at after a comprehensive consideration of all relevant factors," rather than "mere boiler-plate approval phrased in appropriate language but unsupported by evaluation of the facts or analysis of the law." *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 434, 88 S.Ct. 1157, 1168, 20 L.Ed. 1 (1967). The requirement that adequate information be set forth in sufficient detail to enable approval of a settlement parallels the same requirement applicable to district court consideration of settlements in class action or derivative actions pursuant to Rules 23 and 23.1 of the Federal Rules of Civil Procedure. *In re Lion Capital Group*, 49 B.R. 163, 176

(Bankr.S.D.N.Y., 1985); *see also In the matter of Carla Leather, Inc.*, 44 B.R. 457, 466 (Bankr.S.D.N.Y., 1984). Its purpose, of course, is to insure that the lower court did indeed give fair consideration to each party's claim.

In light of this purpose, if the record contained "adequate facts to support the decision of the trial court to approve the proposed compromise, a reviewing court would be properly reluctant to attack that action solely because the Court failed adequately to set forth its reasons for the evidence on which they were based." *In re Flight Transportation Corporation Securities Litigation*, 730 F.2d 1128, 1136 (8th Cir.1984) (*quoting Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 at 437, 88 S.Ct. 1157 at 1169–70). Although no specific standards are required in liquidation proceedings, and we adopt none, we believe that here the record supports the bankruptcy court's decision even under the standards set for reorganization.

■ While specific findings of fact by a bankruptcy judge and a clear outline of his analysis in approving the settlement are helpful, we decline to impose such a high standard. Mandating that a bankruptcy judge write a full opinion on the merits of every settlement would only serve to slow the entire process and waste scarce judicial resources. Settlement is intended to conserve such resources, and is therefore encouraged. All that is required is an indication that the Court fairly considered the merits of the compromise, and did not abuse his discretion in approving it.

■ Here, although the bankruptcy judge did not explicitly state his reasons for approving the settlement, his statements throughout the hearing indicate that he had weighed the required factors. The judge had considered the likely outcome of litigation [3], the delay of further litigation [4], and impact on creditors.[5] The bankruptcy court concluded that the only way that the interest holders would realize any return on their investments would be to continue to operate the wells and distribute income according to the settlement agreement. To hear evidence on the claims would prolong the proceeding, and the bankruptcy judge clearly thought the secured creditors would prevail.

## II.

The court now turns to the merits of the settlement in issue. Did the bankruptcy court abuse its discretion in approving the settlement?

■ Bankruptcy Rule 9019 empowers the court to approve a compromise or settlement. The rule is the same as former Rule 919(a), which had been interpreted to give the bankruptcy court broad authority to approve compromises. *In re Sherman Homes, Inc.*, 28 B.R. 176, 177 (Bankr.D. Maine, 1983). Absent a clear abuse of discretion, approval of a compromise of the settlement will not be disturbed. *In the Matter of Walsh Construction, Inc.*, 669 F.2d 1325, 1328 (9th Cir.1982).

The criteria the bankruptcy judge must consider in determining the reasonable-

3. "But I know that if I turn this down and I do get a complete abandonment of all these wells, you're not going to get a penny."

Also, "They are entitled to 100 I think off the record, I haven't tested their security agreement, their mortgages. I am not testing it because he says it may be good, I think they're good, but this is a settlement. That's all I'm doing is a settlement." Speaking to appellant Stockenberg, the judge also said, "And there are lots of people who don't like banks. I feel that they are just another creditor just like you, you are an investor we got creditors whose rights are more sacred than yours, Creditors ... And

investors are really... If he had found something for you and I think you go into the circuit court you won't get anything at all."

4. "I'm not going to hear the evidence on that because I'm listening to a compromise. Sure if I do all of that we won't have to worry about a compromise but that is two years again. And the threat of another two years on appeal."

5. Concern for creditors here involves secured creditors, since the court and trustee agreed that there would be nothing left in the estate for general creditors.

ness[6] of a settlement are well established. They are: (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collections; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and the proper deference to their reasonable views in the premises. *Drexel v. Loomis,* 35 F.2d 800, 806 (8th Cir.1929); *In re Sherman Homes, Inc.,* 28 B.R. at 177; *In the Matter of Carla Leather, Inc.,* 44 B.R. at 466 (Test for determining whether the settlement falls within the bounds of reasonableness is no different under the Bankruptcy Code than under the Bankruptcy Act).

 In addition, the bankruptcy court is to consider that the law favors compromise. *In re Sherman Homes, Inc.,* 28 B.R. at 177; *In re Blair,* 538 F.2d at 861. The bankruptcy judge and the district court also may give weight to the opinions of the trustee, the parties, and their attorneys. *In re Blair,* 538 F.2d at 851.

 In exercising his discretion, the bankruptcy judge also should consider the best interest of the estate. *In re Hallet,* 33 B.R. 564 (Bankr.D.Maine, 1983); *In re Central Ice Cream Co.,* 59 B.R. 476, 487 (Bankr.N.D.Ill.E.D., 1985) ("In approving a settlement in a liquidation proceeding, the Court must determine what course of action is in the best interest of the estate, with major consideration to the interest of creditors ... A proposed settlement in a liquidation proceeding should be approved if it provides for 'the best possible realization upon the available assets ... without undue waste or needless or fruitless litigation.' " *Id.* at 487 (*quoting In re Kearney,* 184 F. 190–92 (N.D.N.Y.1910)).

 Finally, it is important to note that a creditor's objection is not controlling and will not prevent approval. *In re Sherman Homes, Inc.,* 28 B.R. at 178.

 Turning to the case at bar, appellants specifically claim that the bankruptcy court abused its discretion because there was no finding that the banks' interests attached to all of the wells and that the banks' interests have priority over theirs. However, it is important to remember that the bankruptcy judge's responsibility is not to decide the numerous questions of law and fact raised by appellants but rather to canvass the issues and see whether the settlement " 'falls below the lowest point in the range of reasonableness.' " *In re W.T. Grant Co.,* 699 F.2d 599, 608 (2d Cir.1983) (*quoting Newman v. Stein,* 464 F.2d 689, 693, *cert. denied sub nom Benson v. Newman,* 409 U.S. 1039, 93 S.Ct. 521, 34 L.Ed.2d 488 (1972)); *see also In the Matter of Carla Leather, Inc.,* 44 B.R. 457; *In re Lion Capital Group,* 49 B.R. 163. We reject the notion that a "mini-trial" on the merits of the claim sought to be compromised is required. *See In re Blair,* 538 F.2d 849.

The terms of the agreement in question here were described as follows:

Neither First National Bank or the Marine Bank may foreclose on any secured interest. The trustee may retain the equipment in which First National Bank asserted a secured interest. Neither bank will be entitled to the full revenue of any particular well, regardless of whether either bank had a fully secured interest in the particular well. Fifty percent of the revenue generated by operation of the wells will be distributed to the working interest holders of the wells so they may recoup their investment. The other 50% will be distributed to the two banks in such proportion as the banks shall determine.

---

6. Courts have used a "fair and equitable" standard in reviewing compromises in reorganization cases. *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. at 424, 88 S.Ct. at 1163. *See also In re Chicago Rapid Transit,* 196 F.2d 484, 490 (7th Cir.1952). In *In the Matter of Aweco,* *Inc.,* 725 F.2d 293 (5th Cir.1984), the court described "fair and equitable" as a term of art, meaning that " 'senior interests are entitled to full priority over junior ones.' " *Id.* at 298 (*quoting SEC v. American Trailer Rentals Co.,* 379 U.S. 594, 85 S.Ct. 513, 13 L.Ed.2d 510 (1965)).

We do not think the Court abused its discretion in approving the compromise.

## III.

■ Appellants contend that the trustee's attorney had a conflict of interest because he had represented First National Bank earlier in the proceedings. We disagree. The appellants acknowledge that there was no conflict of interest at the time the bankruptcy judge authorized the appointment of the attorney to represent the trustee. They argue, however, that at that time the judge could not foresee that the First National Bank would be litigating priorities with the working interest holders.

It is provided in 11 U.S.C. § 327(c) that a professional person employed by the trustee is not disqualified because of such person's representation of a creditor, "unless there is objection by another creditor, in which case the court shall disapprove of such employment if there is an actual conflict of interest." In this case, First National Bank was represented exclusively by another attorney with respect to the complaint and order involved, and all negotiations leading up to it. Further, the trustee's attorney has been the attorney for the trustee since his appointment to represent the trustee. There was therefore no conflict justifying disqualification of the trustee's attorney.

## IV.

■ Finally, appellants charge that the bankruptcy judge erred in failing to liquidate the estate immediately. However, the bankruptcy court did not treat the proceeding as a reorganization proceeding. Rather, the judge stated that he was seeking to keep the business going to maximize receipts when the business was sold as he is authorized to do under 11 U.S.C. § 721. There was clearly no abuse of discretion in his doing so.

For the foregoing reasons, we AFFIRM the decision of the bankruptcy court.