In re Howard S. **GOLDSTEIN,** Barbara Lee Goldstein, Debtors.

**Bankruptcy No. 2–90–04432.**

United States Bankruptcy Court, S.D. Ohio, E.D.

Sept. 12, 1991.

William B. Logan, Jr., Stanley L. Myers, Luper, Wolinetz, Sheriff & Neidenthal, Columbus, Ohio, for debtors.

David W. Pryor, Hamilton, Kramer, Myers & Cheek, Columbus, Ohio, for Samuel Goldstein.

Jacqueline T. Johnson, Columbus, Ohio, for Phyllis Hardy.

Michael T. Gunner, Hilliard, Ohio, Chapter 7 Trustee and for trustee.

Charles M. Caldwell, Office of the U.S. Trustee, Columbus, Ohio, Asst. U.S. Trustee.

## ORDER ON APPLICATION FOR AUTHORITY TO COMPROMISE CLAIM

R. GUY COLE, Jr., Bankruptcy Judge.

### I.  *Findings of Fact*

1. Howard S. and Barbara Lee Goldstein, the debtors, voluntarily filed a joint petition for relief under the provisions of Chapter 7 of the Bankruptcy Code on July 2, 1990.

2. On August 7, 1990, the debtors attended a meeting of their creditors. As a routine matter, the trustee, Michael T. Gunner, asked the debtors whether they had received, or expected to receive, any inheritances. The debtors responded in the negative.

3. On August 9, 1990, Howard Goldstein's (hereinafter referred to as "Goldstein") aunt, Helen Jiedel, a resident of Los Angeles, California, died following a brief illness. Prior to her death, Jiedel created a revocable *inter vivos* trust (the "Trust"). The Trust names Goldstein as a beneficiary and entitles him, upon Jiedel's death, to receive a lump-sum distribution of $50,000. Goldstein was unaware of Jiedel's illness and his status as a beneficiary when he attended the meeting of his creditors.

4. Within a day or two after Jiedel's death, her brother, Arnold Frisch, informed Goldstein that he might receive some money by virtue of Jiedel's death. Frisch refused to provide any specific information and told Goldstein he would be "cut out" if he pressed for further details.

5. By letter dated September 25, 1990, Goldstein's counsel, Ruth Ann Hohl, informed Gunner of Jiedel's death and of the possibility that Goldstein was an heir to Jiedel's estate. The letter also indicated that Frisch refused to divulge any informa-

tion concerning Jiedel's Trust or last will and testament (the "Will").

6. On August 30, 1990, Gunner filed a report with the Court indicating an absence of assets in the estate for administration and requesting that the Chapter 7 case be closed. This report was approved by the Court on November 15, 1990, and the case was closed.

7. In a letter dated November 19, 1990, Hohl advised Gunner that the debtors had received the sum of $50,000 (referred to as the "inheritance") from Jiedel's estate. On December 5, 1990, Gunner requested reopening of the case for purposes of administering the inheritance. The case was reopened by court order entered January 7, 1991.

8. On February 7, 1991, Gunner requested that the Court order the debtors to turn over as estate property all proceeds of the inheritance. The debtors opposed Gunner's request.

9. On May 7, 1991, Gunner filed the within application for authority to compromise his claim, as trustee, to the inheritance. According to the terms of the proposed compromise, the debtor will pay the bankruptcy estate the sum of $6,000 in full settlement of any and all claims that the trustee may have against the debtor arising from the Trust proceeds. Gunner maintains that the proposed compromise is in the best interest of the estate.

10. In deciding to compromise his claim, Gunner has examined only such portions of the Trust as provided to him by Frisch. Gunner has not reviewed the Will, assuming one exists.

11. Gunner and Goldstein jointly assert that the Trust provisions governing Goldstein's inheritance constitute a spendthrift trust. They foresee four distinct possibilities with respect to Gunner's claim. They believe that the trustee would recover (a) nothing if the inheritance is found not to be property of the estate; (b) the sum of $12,500 if the Trust is governed by California law; (c) a sum of money less than $12,500 if California law governs and the Court finds the inheritance is reasonably necessary for the debtors' support; and (d) the

entire $50,000 if Ohio law governs the spendthrift trust provisions. Gunner and Goldstein contend the most likely outcome is that the estate is entitled to the sum of $12,500, subject to defenses which could result in no recovery whatsoever.

12. Samuel Goldstein, Goldstein's stepson, and Phyllis Hardy (collectively referred to as the "Objectors") oppose Gunner's decision to compromise his claim, arguing that the compromise is premature and unreasonably low considering the amount of the inheritance. The Objectors maintain that Gunner's failure to examine the Will or the entire trust agreement precludes approval of the compromise. According to the Objectors, there is no support for Gunner's conclusion that the inheritance results from a spendthrift trust, rather than some other type of devise, bequest or trust.

13. The sole asset of the estate appears to be the trustee's claim to the inheritance.

## II. *Conclusions of Law*

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334 and the General Order of Reference entered in this judicial district. This is a core proceeding which the Court may hear and determine in accordance with 28 U.S.C. § 157(b)(2)(O).

Fed.R.Bankr.P. 9019(a) authorizes a trustee to seek court approval of a proposed compromise. The decision of whether a compromise should be accepted or rejected lies within the sound discretion of the court. *See, e.g., Matter of Ericson*, 6 B.R. 1002 (D.C.Minn.1980); *In re Hydronic Enterprise, Inc.*, 58 B.R. 363 (Bankr. D.R.I.1986); *In re Mobile Air Drilling Co., Inc.*, 53 B.R. 605 (Bankr.N.D.Ohio 1985); *Knowles v. Putterbaugh (In re Hallet)*, 33 B.R. 564, 565 (Bankr.D.Me.1983). While the court may consider the objection of a creditor or other party-in-interest, such an objection is not controlling and will not prevent court approval of a compromise. *See, e.g., In re General Store of Beverly Hills*, 11 B.R. 539 (Bankr. 9th Cir.1981); *In re Mobile Air Drilling Co., Inc.*, 53 B.R. at

607; *In re Blue Coal Corp.*, 47 B.R. 758 (Bankr.M.D.Pa.1985).

■■■ To receive approval, a compromise must be determined to be in the "best interests of the estate." *In re Heissinger Resources, Ltd.*, 67 B.R. 378, 383 (C.D.Ill. 1986); *In re Hydronic Enterprise, Inc.*, 58 B.R. at 365; *In re Mobile Air Drilling Co., Inc.*, 53 B.R. at 607; *In re Lakeland Development Corp.*, 48 B.R. 85, 89 (Bankr. D.Minn.1985); *In re Hallet*, 33 B.R. at 565. The trustee, as proponent of a compromise, has the burden of persuading the Court that settlement is in the best interest of the estate. *See In re Hydronic Enterprise, Inc.*, 58 B.R. at 365; *In re Hallet*, 33 B.R. at 565. In determining whether a compromise is in the estate's best interest, four criteria ordinarily are employed:

(1) The probability of success in the litigation;

(2) The difficulties, if any, to be encountered in the matter of collection;

(3) The complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it;

(4) The paramount interest of creditors and proper deference to their reasonable views.

*Drexel v. Loomis*, 35 F.2d 800 (8th Cir. 1929). *Accord, In re Heissinger Resources, Ltd.*, 67 B.R. at 383; *In re Hydronic Enterprise, Inc.*, 58 B.R. at 365; *In re Mobile Air Drilling Co., Inc.*, 53 B.R. at 607; *In re Lakeland Development Corp.*, 48 B.R. at 89–90; *Matter of Baldwin United Corp.*, 43 B.R. 888 (Bankr.S.D.Ohio 1984); *Fogg v. Sherman Homes, Inc. (In re Sherman Homes, Inc.)*, 28 B.R. 176, 178 (Bankr.D.Me.1983); *In Re W.T. Grant Co.*, 10 B.R. 801, 804 (Bankr.S.D.N.Y.1981). In passing upon a proposed compromise, the Court must consider the principle that "law favors compromise." *Port O' Call Investment Co. v. Blair (In re Blair)*, 538 F.2d 849, 851 (9th Cir.1976); *In re Heissinger Resources, Ltd.*, 67 B.R. at 383; *In re Lakeland Development Corp.*, 48 B.R. at 90; *In re Sherman Homes, Inc.*, 28 B.R. at 177.

■■■ It is important to note that the bankruptcy court's responsibility is not to decide the numerous questions of law and fact raised by parties, but rather to canvas the issues in order to determine whether the settlement "falls below the lowest point in the range of reasonableness." *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir.1983) (quoting *Newman v. Stein*, 464 F.2d 689, 693, *cert. denied sub nom Benson v. Newman*, 409 U.S. 1039, 93 S.Ct. 521, 34 L.Ed.2d 488 (1972)); *In re Tampa Chain Co., Inc.*, 70 B.R. 25, 26 (S.D.N.Y.1987); *In re Heissinger Resources, Ltd.*, 67 B.R. at 383. There is no need to conduct a "mini-trial" on the merits of the claim. *In re Blair*, 538 F.2d 849 (9th Cir.1976) (per curiam); *In re Heissinger Resources, Ltd.*, 67 B.R. at 383.

### A. *Probability of Success*

The first factor of *Drexel* requires the Court to examine the trustee's chances of succeeding on his claim. This is a difficult task on the instant record. To be sure, Gunner has investigated and analyzed his claim with diligence. He has concluded there are at least four distinct possible outcomes, based upon his assessment of conflict-of-laws provisions as well as spendthrift law in California and Ohio. This analysis has been made, however, without the benefit of Jiedel's Will or the full text of the Trust. Although Frisch has supplied Gunner with selected portions of the Trust, there is no evidence he has provided all portions of the Trust which might be relevant to Gunner's inquiry. While there is no reason to doubt the authenticity of Frisch's submission, it is, by Gunner's own admission, a limited documentary production.

Determining the success of potential litigation based upon the facts available to Gunner and the Court is problematic, at best. While the Court suspects that Gunner's analysis is reasonably accurate, the absence of seemingly indispensable facts concerning the claim makes it impossible for the Court to find that the compromise is reasonable. Moreover, there is a dearth of legal authority cited by the trustee to support the various scenarios he foresees. Accordingly, the Court cannot determine

the trustee's likelihood of success on his claim and, therefore, that his decision to compromise is reasonable.

### B. *Difficulty in Collection*

The debtors have possession of the inheritance and have agreed not to dispose of it pending the outcome of Gunner's turnover request. There is, thus, no reason to believe there would be any difficulty in collecting the inheritance if Gunner were to prevail on his claim.

### C. *Complexity, Expense, Inconvenience and Delay*

The trustee's claim involves extremely complicated and controverted issues. These issues include whether the inheritance is property of the estate under 11 U.S.C. § 541(a). It also includes conflict-of-laws issues as to whether California or Ohio law applies (it would appear that California law applies, although not having copies of the Will or Trust make this determination speculative). There is also a question of whether the California Probate Code would apply to a trust, and specifically to this Trust, and whether the debtors might be able to establish the need for some or all of the inheritance for their necessary living expenses even if the trustee has a valid claim to the inheritance.

It is clear, too, that pursuit of the claim would involve considerable expense. The Court is not unmindful of Gunner's plight, in that he is being asked by the Objectors to investigate, analyze, and pursue a claim without any financial support. Of course, should Gunner recover all or some of the inheritance, he will be permitted to receive compensation from such funds. However, if Gunner recovers nothing on the claim, then his efforts as trustee and attorney essentially are uncompensated. This is a significant factor in the Court's calculus.

Additionally, with litigation come considerations of significant inconvenience and delay. Obtaining copies of the Will, the Trust and other such documents, and the testimony of out-of-state witnesses, involves time and money. And, of course, the litigation process, including likely appeals, could consume years.

In short, the complexity of the issues, and the attendant expenses, inconvenience and delay, support a compromise of the trustee's claim. The undetermined issue is the monetary value of such compromise and, in that regard, whether the compromise proposed by the trustee is reasonable.

### D. *Views of Creditors*

Two creditors have objected to the compromise. One of the objecting creditors, Hardy, has objected on somewhat unclear grounds. Hardy cites the case of *Scott v. Bank One Trust Company, N.A. (In re McCombe)*, 93 B.R. 597 (Bankr.S.D.Ohio 1988) in support of her objection. In *McCombe*, the court found a spendthrift provision to be unenforceable under Ohio law. The Court is unpersuaded, however, that the *McCombe* decision serves as authority for the denial of a compromise in this matter inasmuch as it is probable that California law applies to the provisions of the Trust.

Samuel Goldstein opposes the compromise on the grounds of prematurity. He argues that the trustee decided to compromise the claim even before reviewing [an affidavit] submitted to him by Frisch which makes reference to selected portions of the Trust and upon which Gunner purportedly relies.

### III. *Conclusion*

■ The difficult and controverted issues of fact and law giving rise to the trustee's claim definitely favor compromise in this instance. The Court is unable to conclude, however, that the trustee's decision to compromise the claim is reasonable. The Court believes that the trustee's decision to accept $6,000 on the subject $50,000 claim cannot be determined to be reasonable absent a thorough review of the underlying documents—the Will and the Trust—and applicable law. Although Frisch has refused an informal request by Goldstein to produce the Will or the full text of the Trust, Gunner easily may invoke a number of procedures to obtain copies of those documents.

Accordingly, the trustee should continue to investigate and analyze his claim as to the inheritance. If, after conducting such additional analysis the trustee chooses to seek the compromise of this claim, he should supplement his application accordingly and provide notice of compromise to all parties, giving such parties an opportunity to be heard on any written opposition. A hearing will be held only if a request has been made and the Court deems a hearing necessary.

IT IS SO ORDERED.