USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT No. 97-1381 IN RE: HEALTHCO INTERNATIONAL, INC., Debtor,  ________ HICKS, MUSE & CO., INC., et al., Appellants, v. WILLIAM A. BRANDT, JR., TRUSTEE, Appellee.  ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Nathaniel M. Gorton, U.S. District Judge] ___________________  ____________________ Before Stahl, Circuit Judge, _____________ Godbold* and Cyr, Senior Circuit Judges. _____________________  ____________________ David L. Evans, with whom Harold B. Murphy, Daniel J. Lyne, D. ______________ _________________ _______________ __ Ethan Jeffery, Hanify & King, Mike McKool, Jr., Jeffrey A. Carter and ______________ _____________ ________________ _________________ McKool Smith were on brief for appellants ____________ David C. Cohn, with whom David B. Madoff and Cohn & Kelakos LLP _____________ _______________ ___________________ were on brief for appellee.  ____________________ February 12, 1998  ____________________  ____________________ *Of the Eleventh Circuit, sitting by designation. CYR, Senior Circuit Judge. The question presented on CYR, Senior Circuit Judge.  ____________________ appeal is whether the bankruptcy court abused its discretion by approving a settlement between the chapter 7 trustee for Healthco International, Inc. and a consortium of banks ("the Bank Group") which financed a prepetition leveraged buy-out ("LBO") of Healthco by appellants Hicks Muse & Co., Inc. and its coinvestors (collectively: "Hicks Muse"). We affirm. I I BACKGROUND BACKGROUND __________ Appellant Hicks Muse financed the 1991 LBO with a $50 million term loan and a $65 million revolving credit facility from the Bank Group, secured by liens on all Healthco assets. Healthco filed its chapter 11 petition in June 1993 and continued to operate as a debtor-in-possession. Three months later an interim trustee was appointed and the reorganization was converted to a chapter 7 liquidation. By the time the chapter 7 trustee ("Trustee") was appointed approximately one month later, Healthco's assets already were undergoing liquidation by the interim trustee, subject to bankruptcy court approval. In the chapter 11 schedules the Healthco assets were valued at $149 million, but were later assigned a liquidation value between $33 and $66 million. After obtaining relief from the automatic stay, see ___ Bankruptcy Code 362, 11 U.S.C. 362, the Bank Group proceeded to liquidate its Healthco collateral, having agreed to provide 2 the Trustee with "full, complete, and detailed accounting[s]" of the liquidation on a monthly basis. Over the ensuing year the Trustee lodged several complaints, with the Bank Group and the bankruptcy court, that the promised accountings had not been forthcoming or were deficient. Eventually the Bank Group submitted a thirty-page accounting pursuant to court order and provided the Trustee with thirty cartons of raw invoices generated during the collateral liquidation process. After declining to incur "the incredible cost . . . of . . . go[ing] through the[se] records item by item," the Trustee commenced an adversary proceeding against Hicks Muse and the Bank Group, asserting two principal claims. First, since the LBO had left Healthco insolvent, the Trustee claimed that the $115 million lien obtained by the Bank Group on the Healthco assets constituted a voidable fraudulent transfer (hereinafter: "the fraudulent transfer claim"). See Bankruptcy Code 544(b), 11 ___ U.S.C. 544(b). Second, the Trustee claimed that the Bank Group had liquidated its Healthco collateral in a "commercially unreasonable" manner, see Mass. Gen. Laws Ann. ch. 106, 9- ___ 504(3) ("UCC"), which yielded only $50-60 million on assets with an estimated value (per chapter 11 schedules) exceeding $149 million (hereinafter: "the UCC claim"). The Trustee subsequently proposed to dismiss both the fraudulent transfer claim and the UCC claim, see Fed. R. Bankr. ___ 3 P. 9019(a);1 see also Fed. R. Bankr. P. 9014 (contested matters), see also Fed. R. Bankr. P. 9014 (contested matters), ___ ____ in return for the Bank Group's agreement to pay the chapter 7 in return for the Bank Group's agreement to pay the chapter 7 estate $9 million in cash, waive roughly $1 million in allowed estate $9 million in cash, waive roughly $1 million in allowed priority claims against the chapter 7 estate and a deficiency priority claims against the chapter 7 estate and a deficiency claim estimated at $35 million, and assign to the Trustee any claim estimated at $35 million, and assign to the Trustee any LBO-related claims the Bank Group might have against third LBO-related claims the Bank Group might have against third parties, including nonsettling defendants in the adversary parties, including nonsettling defendants in the adversary proceeding.2 The Trustee in turn agreed not to oppose the $50-60 proceeding.  million secured claim asserted by the Bank Group against the Healthco collateral. Several codefendants, including Hicks Muse, objected to the settlement. At the hearing before the bankruptcy court, the Trustee contended that the proposed $45 million settlement would serve the "best interests" of the chapter 7 estate, see Kowal v. ___ _____ Malkemus (In re Thompson), 965 F.2d 1136, 1141 n.5, 1145 (1st ________ _______________ Cir. 1992), for two reasons. First, the Trustee pointed out that the $45 million offer would return the chapter 7 estate ninety percent of the $50 million estimated maximum litigated value of the fraudulent transfer claim, without litigation risk. Second,  ____________________ 1Bankruptcy Rule 9019(a) provides: "On motion by the trustee 1Bankruptcy Rule 9019(a) provides: "On motion by the trustee and after notice and a hearing, the court may approve a and after notice and a hearing, the court may approve a compromise or settlement." compromise or settlement." 2Initially the Trustee proposed that the Bank Group assign 2Initially the Trustee proposed that the Bank Group assign its deficiency claim to the Trustee, but the bankruptcy court its deficiency claim to the Trustee, but the bankruptcy court disapproved the assignment as inconsistent with the Trustee's disapproved the assignment as inconsistent with the Trustee's fiduciary obligation to unsecured creditors. The court fiduciary obligation to unsecured creditors. The court nonetheless concluded that an outright waiver of the deficiency nonetheless concluded that an outright waiver of the deficiency claim would be permissible. As appellants do not challenge the claim would be permissible. As appellants do not challenge the bankruptcy court ruling in the latter respect, we do not address bankruptcy court ruling in the latter respect, we do not address it. it. 4 the Trustee noted several factors central to his assessment that the UCC claim, fully litigated, could generate only minimal value for the chapter 7 estate. See infra Section II.B.1. The ___ _____ bankruptcy court approved the proposed settlement with one pertinent modification.3 On intermediate appeal to the district court, Hicks On intermediate appeal to the district court, Hicks Muse challenged the bankruptcy court finding that the settlement Muse challenged the bankruptcy court finding that the settlement between the Trustee and the Bank Group had been negotiated in between the Trustee and the Bank Group had been negotiated in "good faith." The district court ruled the "good faith" test "good faith." The district court ruled the "good faith" test immaterial under the "best interests" standard applicable under immaterial under the "best interests" standard applicable under Bankruptcy Rule 9019, and opined that a finding of "good faith" Bankruptcy Rule 9019, and opined that a finding of "good faith" might be misperceived by state courts as a basis for barring might be misperceived by state courts as a basis for barring Hicks Muse from pursuing its state-law contribution claim against Hicks Muse from pursuing its state-law contribution claim against the Bank Group. In all other respects the bankruptcy court order the Bank Group. In all other respects the bankruptcy court order was affirmed by the district court. was affirmed by the district court. II II DISCUSSION DISCUSSION __________ A. Appellate Jurisdiction A. Appellate Jurisdiction ______________________ The Trustee contends that the appeal is moot because Hicks Muse knowingly disregarded his warning that the settlement would be consummated promptly absent a timeous stay of the  ____________________ 3The court expressly refrained from determining the validity 3The court expressly refrained from determining the validity vel non of the Bank Group's purported assignment to the Trustee vel non of the Bank Group's purported assignment to the Trustee ___ ___ of its causes of action against nonsettling codefendants. For of its causes of action against nonsettling codefendants. For post-settlement procedural developments in this adversary post-settlement procedural developments in this adversary proceeding, see In re Healthco Int'l, Inc., 208 B.R. 288 (Bankr. proceeding, see In re Healthco Int'l, Inc., 208 B.R. 288 (Bankr. ___________________________ D. Mass. 1997); In re Healthco, 203 B.R. 515 (Bankr. D. Mass. D. Mass. 1997); In re Healthco, 203 B.R. 515 (Bankr. D. Mass. _______________ 1996); In re Healthco, 201 B.R. 19 (Bankr. D. Mass. 1996); In re 1996); In re Healthco, 201 B.R. 19 (Bankr. D. Mass. 1996); In re _______________ _____ Healthco, 195 B.R. 971 (Bankr. D. Mass. 1996). Healthco, 195 B.R. 971 (Bankr. D. Mass. 1996). ________ 5 bankruptcy court order approving the settlement. As Hicks Muse sought no stay, the Bank Group promptly disbursed $9 million to the Trustee, from which $2.5 million has since been used to defray professional fees. Thereafter, all claims in the adversary proceeding against the Bank Group were dismissed with prejudice. 1. Equitable Mootness 1. Equitable Mootness __________________ The "equitable mootness" doctrine imports both "equitable" and "pragmatic" limitations upon our appellate jurisdiction over bankruptcy appeals. See Institut Pasteur v. ___ _________________ Cambridge Biotech Corp. (In re Cambridge Biotech Corp.), 104 F.3d _______________________ _____________________________ 489, 492 n.5 (1st Cir.), cert. denied, 117 S. Ct. 2511 (1997); _____ ______ Rochman v. Northeast Utils. Serv. Group (In re Public Serv. Co. _______ _____________________________ _______________________ of N.H.), 963 F.2d 469, 471 (1st Cir. 1992). _______ The equitable mootness test inquires whether an unwarranted or repeated failure to request a stay enabled developments to evolve in reliance on the bankruptcy court order to the degree that their remediation has become impracticable or impossible. Id. at 472. In the instant case, however, Hicks ___ Muse neither repeatedly ignored its right, nor significantly delayed utilizing its opportunities, to seek a stay of the order approving the Bank Group settlement. Cf. id. at 472-73 (noting ___ ___ that appellants ignored several opportunities to take interlocutory appeals from orders denying stays during sixteen- month period following confirmation of reorganization plan). Nor has the Trustee met the "pragmatic" mootness test, 6 which contemplates proof that the challenged bankruptcy court order has been implemented to the degree that meaningful appellate relief is no longer practicable even though the appellant may have sought a stay with all due diligence. Instead, the Trustee relies either upon more finely focused reorganization provisions not applicable here, see Bankruptcy ___ Code 1127(b), 11 U.S.C. 1127(b) (barring plan modification after "substantial consummation"), or inapposite settlement provisions pursuant to which lawsuits in nonbankruptcy courts had already been dismissed with prejudice, or substantial distributions had been made to parties no longer amenable to bankruptcy court jurisdiction. Here, of course, the only dismissal with prejudice occurred in the instant adversary proceeding and there has been no showing that any portion of the settlement proceeds disbursed to the Trustee, or to persons employed by the Trustee, could not be recovered with relative ease. See In re The Gibbons-Grable Co., 141 B.R. 614, 617 ___ ______________________________ (Bankr. N.D. Ohio 1992) (noting that interim disbursements of compensation under Bankruptcy Code sections 330 and 331 remain subject to reconsideration); see also In re Spillane, 884 F.2d ___ ____ ______________ 642, 644 (1st Cir. 1989). Accordingly, the equitable mootness doctrine does not bar the present appeal. 2. Section 363(m) Mootness 2. Section 363(m) Mootness _______________________ The Trustee further contends that the appeal is mooted by section 363(m), which states: 7 The reversal or modification on appeal of an authorization under [ 363(b) or (c)] of a _____________ __ _ sale or lease of property [of the estate] ____ __ _____ __ ________ does not affect the validity of a sale or ____ __ lease under such authorization to an entity _____ __ __ ______ that purchased or leased such property in ____ _________ __ ______ ____ ________ good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were ____ __ _____ stayed pending appeal. Bankruptcy Code 363(m), 11 U.S.C. 363(m) (emphasis added). The Trustee argues that section 363(m) applies because the claims which were settled with the Bank Group constituted "property of the estate," see Bankruptcy Code 541(a), 11 U.S.C. 541(a), ___ and therefore the settlement was the functional equivalent of a "sale . . . of property" of the estate under section 363(m). The Trustee s contention is fraught with problems. First, it is at odds with the unambiguous language employed in section 363(m). See Laracuente v. Chase Manhattan ___ __________ _______________ Bank, 891 F.2d 17, 22 n.2, 23 (1st Cir. 1989) (in construing ____ Bankruptcy Code, "our inquiry . . . ends where, as here, the plain language of the statute is unambiguous"). By its very nature a settlement resolves adversarial claims prior to their _____ definitive determination by the court. In contrast, a "sale" effects a [t]ransfer of [ the title . . . ] [to] property for [a] consideration . . . . Black s Law Dictionary 1200 (5th ed. 1979). The bankruptcy court below simply endorsed a settlement negotiated by the adversaries whereby the Trustee abandoned claims against the Bank Group in return for a prescribed consideration.  Second, the interpretation urged by the Trustee is not 8 in step with the legislative policy animating section 363(m), which sought to encourage optimum bids for "property of the estate" from entities not otherwise privy to the bankruptcy proceedings, by ensuring that orders approving such sales promptly become final absent a timeous stay. See Mark Bell ___ __________ Furniture Warehouse, Inc. v. D.M. Reid Assocs. (In re Mark Bell _________________________ _________________ ________________ Furniture Warehouse, Inc.), 992 F.2d 7, 8 (1st Cir. 1993); ___________________________ Willemain v. Kivitz, 764 F.2d 1019, 1023 (4th Cir. 1985) _________ ______ (defining "good faith purchaser" as " one who purchases the assets for value, in good faith, and without notice of adverse claims ") (citation omitted); Greylock Glen Corp. v. Community ____________________ _________ Sav. Bank, 656 F.2d 1, 4 (1st Cir. 1981). By contrast, the Bank _________ Group in no sense qualified as an outside bidder eligible for the extraordinary "finality" guaranties afforded by section 363(m). Instead, as the defendant directly targeted by the Trustee in the subject adversary proceeding, not only was the Bank Group the one "bidder" at all concerned about resolving the disputed claims asserted against it by the Trustee, but it lacked any incentive to abandon its settlement bargain with the Trustee even absent the extraordinary "finality" guaranties envisioned in section 363(m). Finally, the authorities cited by the Trustee are inapposite or inconclusive at best. See, e.g., In re Telesphere ___ ____ ________________ Communications, Inc., 179 B.R. 544 (Bankr. N.D. Ill. 1994). _____________________ Telesphere suggests no broad functional equivalence between a __________ property sale or lease and a settlement, but simply that courts 9 may consult section 363 for guidance in identifying standards for ________ such basic procedures as "notice" and "hearing," id. at 552 ___ (citing 11 U.S.C. 363(b)), particularly since no substantive Code provision directly governs settlement approvals by the bankruptcy court, compare Fed. R. Bankr. 9019 (prescribing _______ procedural guidance for settlements), with Fed. R. Bankr. P. 6004 ____ (prescribing distinct procedural rules for 363 sales). For that matter, Telesphere did not so much as mention section __________ 363(m), let alone endorse its wholesale importation into the settlement arena.4  ____________________ 4Nevertheless, there lurks a concern, not raised here, which may cut the other way. Prior to the Bankruptcy Code, sales of property belonging to the estate were governed by Bankruptcy Act 70(f), 11 U.S.C. 110 (repealed), and settlements were subject to Bankruptcy Act 27, 11 U.S.C. 50 (repealed). See 9 ___ Lawrence P. King, Collier on Bankruptcy 9019.RH, at 9019-12 ______________________ (15th ed. 1995). Former Bankruptcy Rule 919, predecessor to Bankruptcy Rule 9019, was the procedural counterpart to Bankruptcy Act 27, whose substantive provisions have not been carried forward in the Bankruptcy Code. See In re Dow Corning ___ __________________ Corp., 198 B.R. 214, 244-47 (Bankr. E.D. Mich. 1996); In re _____ ______ Sparks, 190 B.R. 842, 843-44 (Bankr. N.D. Ill. 1996). Moreover, ______ the legislative history relating to the repeal of Bankruptcy Act 27 affords no insight to the intent behind this discontinuity. Although Bankruptcy Rule 9019 purports to empower the bankruptcy court to approve settlements, it may not abridge, enlarge, or modify any substantive right [enacted in the Code].  ___________ 28 U.S.C. 2075 (emphasis added). Thus, absent some clear Code source for the substantive power to approve settlements, one may question whether Congress envisioned section 363 as that source, but see Martin v. Kane (In re A & C Properties), 784 F.2d 1377, ___ ___ ______ ____ ______________________ 1381 n.4 (9th Cir. 1986) (suggesting, in dicta, that Congress may have intended the general equitable powers prescribed in Code  105 to subsume the specific powers described in Bankruptcy Act  27), or whether the power to approve settlements is simply inherent to the judicial forum. As in any other case, we must consider, sua sponte if need ___ ______ be, whether we possess subject matter jurisdiction over an appeal. See Lopez v. Unanue Casal (In re Unanue Casal), 998 F.2d ___ _____ ____________ __________________ 28, 30 (1st Cir. 1993). Nonetheless, we may bypass problematic jurisdictional questions if it appears that the appeal must in 10 B. The UCC Claim Settlement5 B. The UCC Claim Settlement ________________________ Hicks Muse maintains that the bankruptcy court abused Hicks Muse maintains that the bankruptcy court abused its discretion in approving the UCC claim settlement absent an its discretion in approving the UCC claim settlement absent an adequate factual foundation for determining the value of the UCC adequate factual foundation for determining the value of the UCC claim because the Trustee never reviewed the thirty cartons of claim because the Trustee never reviewed the thirty cartons of invoices generated by the Bank Group during its collateral invoices generated by the Bank Group during its collateral liquidation. See supra Section I; see also, e.g., In re liquidation. See supra Section I; see also, e.g., In re ___ _____ ___ ____ ____ ______ Goldstein, 131 B.R. 367, 371 (Bankr. S.D. Ohio 1991) Goldstein, 131 B.R. 367, 371 (Bankr. S.D. Ohio 1991) _________ (disapproving settlement because trustee made no "thorough review (disapproving settlement because trustee made no "thorough review of the underlying documents [a trust and will] and applicable of the underlying documents [a trust and will] and applicable law"). law"). The bankruptcy court essentially is expected to The bankruptcy court essentially is expected to " assess[] and balance the value of the claim[s] . . . being " assess[] and balance the value of the claim[s] . . . being compromised against the value . . . of the compromise proposal. " compromised against the value . . . of the compromise proposal. " Jeffrey v. Desmond, 70 F.3d 183, 185 (1st Cir. 1995) (citation Jeffrey v. Desmond, 70 F.3d 183, 185 (1st Cir. 1995) (citation _______ _______ omitted). It may consider, among other factors: (1) the omitted). It may consider, among other factors: (1) the probability of success were the claim to be litigated given probability of success were the claim to be litigated given the legal and evidentiary obstacles and the expense, the legal and evidentiary obstacles and the expense, inconvenience and delay entailed in its litigation measured inconvenience and delay entailed in its litigation measured against the more definitive, concrete and immediate benefits against the more definitive, concrete and immediate benefits  ____________________ all events fail on the merits. See Institut Pasteur, 104 F.3d at ___ ________________ 492. As this is such a case, we proceed to the merits. 5Bankruptcy court orders endorsing settlements are reviewed for manifest abuse of discretion. See Jeffrey v. Desmond, 70 ___ _______ _______ F.3d 183, 185 (1st Cir. 1995). Moreover, "[t]he [bankruptcy] judge . . . is not to substitute her judgment for that of the trustee, and the trustee's judgment is to be accorded some deference." Hill v. Burdick (In re Moorhead Corp.), 208 B.R. 87, ____ _______ ____________________ 89 (B.A.P. 1st Cir. 1997). Compromises are favored in bankruptcy. 9 Collier on Bankruptcy 9019.01, at 9019-2. _____________________ 11 attending the proposed settlement, see Kowal, 965 F.2d at 1141 attending the proposed settlement, see Kowal, 965 F.2d at 1141 ___ _____ n.5, 1145 (so-called "best interests" standard); (2) a reasonable n.5, 1145 (so-called "best interests" standard); (2) a reasonable accommodation of the creditors' views regarding the proposed accommodation of the creditors' views regarding the proposed settlement; and (3) the experience and competence of the settlement; and (3) the experience and competence of the fiduciary proposing the settlement. See Jeffrey, 70 F.3d at 185; fiduciary proposing the settlement. See Jeffrey, 70 F.3d at 185; ___ _______ In re Texaco, Inc., 84 B.R. 893, 902 (Bankr. S.D.N.Y. 1988) In re Texaco, Inc., 84 B.R. 893, 902 (Bankr. S.D.N.Y. 1988) ____________________ (citing Protective Committee for Indep. Stockholders of TMT (citing Protective Committee for Indep. Stockholders of TMT _________________________________________________________ Trailer Ferry, Inc. v. Anderson, 390 U.S. 414 (1968)). Trailer Ferry, Inc. v. Anderson, 390 U.S. 414 (1968)). ___________________ ________ 12 1. "Best Interests" 1. "Best Interests" ______________ The Trustee identified several reasons for settling the UCC claim for minimal value.6 First, the estate would face a First, the estate would face a formidable burden in attempting to demonstrate that the Bank formidable burden in attempting to demonstrate that the Bank Group liquidated its collateral in a "commercially unreasonable" Group liquidated its collateral in a "commercially unreasonable" manner. Second, Hicks makes too much of the Trustee's decision manner. Second, Hicks makes too much of the Trustee's decision to forego a costly and time-consuming lapidarian review of every to forego a costly and time-consuming lapidarian review of every invoice generated during the collateral liquidation, especially invoice generated during the collateral liquidation, especially since Hicks makes no suggestion that the individual invoices since Hicks makes no suggestion that the individual invoices reflect any relevant information other than the price obtained. reflect any relevant information other than the price obtained. Ordinarily a UCC 9-504(3) claimant must show something besides Ordinarily a UCC 9-504(3) claimant must show something besides a low price, as by demonstrating that the collateral liquidation a low price, as by demonstrating that the collateral liquidation was not conducted in a commercially reasonable manner. See Mass. was not conducted in a commercially reasonable manner. See Mass. _________ ___ Gen. Laws Ann. ch. 106, 9-507(2); RTC v. Carr, 13 F.3d 425, Gen. Laws Ann. ch. 106, 9-507(2); RTC v. Carr, 13 F.3d 425, ___ ____ 429-30 (1st Cir. 1993) (citing Chartrand v. Newton Trust Co., 5 429-30 (1st Cir. 1993) (citing Chartrand v. Newton Trust Co., 5 _________ _________________ N.E.2d 421, 423 (Mass. 1936)); Nadler v. BayBank Merrimack N.E.2d 421, 423 (Mass. 1936)); Nadler v. BayBank Merrimack ______ __________________ Valley, N.A., 733 F.2d 182, 184 (1st Cir. 1984). Thus, absent Valley, N.A., 733 F.2d 182, 184 (1st Cir. 1984). Thus, absent ____________ extraordinary circumstances not present here, mere evidence that extraordinary circumstances not present here, mere evidence that the Healthco collateral might have returned more than $50 million the Healthco collateral might have returned more than $50 million in some exquisitely orchestrated liquidation did not offset the in some exquisitely orchestrated liquidation did not offset the substantial burdens and risks which the Trustee would have substantial burdens and risks which the Trustee would have encountered in litigating the UCC claim. encountered in litigating the UCC claim. Furthermore, the insistence by Hicks Muse that the Furthermore, the insistence by Hicks Muse that the  ____________________ 6On the other hand, Hicks Muse offered no solid evidentiary basis for second-guessing the Trustee's assessment that the settlement recoveries would amount to 90% of the total allegedly due the estate on the fraudulent transfer claim. 13 Trustee review every invoice in the thirty cartons delivered by Trustee review every invoice in the thirty cartons delivered by the Bank Group is predicated on the mistaken notion that the the Bank Group is predicated on the mistaken notion that the Trustee or the bankruptcy court was obliged to fix the value of Trustee or the bankruptcy court was obliged to fix the value of the UCC claim with near mathematical precision before it could be the UCC claim with near mathematical precision before it could be settled. See Kowal, 965 F.2d at 1145 ("[A] chapter 7 trustee . . settled. See Kowal, 965 F.2d at 1145 ("[A] chapter 7 trustee . . ___ _____ . realistically cannot be required to demonstrate to the . realistically cannot be required to demonstrate to the satisfaction of every individual creditor and the debtor, or to satisfaction of every individual creditor and the debtor, or to any compelling degree of certitude, that the settlement benefit any compelling degree of certitude, that the settlement benefit to the chapter 7 estate and the value of the settled claim to the chapter 7 estate and the value of the settled claim comprise a matched set."). Among other practical considerations comprise a matched set."). Among other practical considerations overlooked under this approach is the reality that many, if not overlooked under this approach is the reality that many, if not most, claims settled in bankruptcy proceedings are not amenable most, claims settled in bankruptcy proceedings are not amenable either to ready or exact valuation in the abstract. In re Energy either to ready or exact valuation in the abstract. In re Energy ____________ Coop., 886 F.2d 921, 929 (7th Cir. 1989) (" [A]n exact judicial Coop., 886 F.2d 921, 929 (7th Cir. 1989) (" [A]n exact judicial _____ determination of the values in issue would defeat the purpose of determination of the values in issue would defeat the purpose of compromising the claim. ") (citation omitted); In re Lee Way compromising the claim. ") (citation omitted); In re Lee Way _______________ Holding Co., 120 B.R. 881, 897 (Bankr. S.D. Ohio 1990) (noting Holding Co., 120 B.R. 881, 897 (Bankr. S.D. Ohio 1990) (noting ___________ that settling party need only have "[f]amiliarity with a case, that settling party need only have "[f]amiliarity with a case, its factual patterns, legal theories, and evidence," and need not its factual patterns, legal theories, and evidence," and need not be "so familiar with the case as to be prepared for trial"). be "so familiar with the case as to be prepared for trial"). Thus, "th[e] responsibility of the bankruptcy judge, and ours on Thus, "th[e] responsibility of the bankruptcy judge, and ours on review, is not to decide the numerous questions of law and fact review, is not to decide the numerous questions of law and fact raised by appellants but rather to canvass the issues and see raised by appellants but rather to canvass the issues and see whether the settlement 'fall[s] below the lowest point in the whether the settlement 'fall[s] below the lowest point in the range of reasonableness. " Cosoff v. Rodman (In re W.T. Grant range of reasonableness. " Cosoff v. Rodman (In re W.T. Grant ______ ______ _________________ Co.), 699 F.2d 599, 608 (2d Cir. 1983) (citation omitted); see In Co.), 699 F.2d 599, 608 (2d Cir. 1983) (citation omitted); see In ___ ___ __ 14 re Energy Coop., 886 F.2d at 929.7 re Energy Coop., 886 F.2d at 929. _______________ The evidence on sale-price insufficiency was highly The evidence on sale-price insufficiency was highly suspect as well. The original complaint valued the UCC claim at suspect as well. The original complaint valued the UCC claim at $99 million or more (i.e., $149 million minimum asset value, less $99 million or more (i.e., $149 million minimum asset value, less ____ $50 million in sale proceeds generated to date). The Trustee $50 million in sale proceeds generated to date). The Trustee quite reasonably attributed its overestimation to aggressive quite reasonably attributed its overestimation to aggressive pleading typical of plaintiffs generally at early stages in the pleading typical of plaintiffs generally at early stages in the proceedings. Moreover, it is often a practical necessity for proceedings. Moreover, it is often a practical necessity for fiduciaries and claimants in bankruptcy proceedings to utilize fiduciaries and claimants in bankruptcy proceedings to utilize the inflated asset values listed in the debtor's schedules as a the inflated asset values listed in the debtor's schedules as a main source for their valuation estimates prior to any main source for their valuation estimates prior to any opportunity to conduct discovery, see Fed. R. Bankr. P. 7026 opportunity to conduct discovery, see Fed. R. Bankr. P. 7026 ___ (discovery) & 7015 (permitting post-discovery amendments to (discovery) & 7015 (permitting post-discovery amendments to complaints in adversary proceedings). See Associates Commercial complaints in adversary proceedings). See Associates Commercial ___ _____________________ Corp. v. A & A Transp., Inc. (In re A & A Transp., Inc.), 10 B.R. Corp. v. A & A Transp., Inc. (In re A & A Transp., Inc.), 10 B.R. _____ ___________________ _________________________ 867, 868-69 (Bankr. D. Mass. 1981) ("[A]lthough the Debtor signs 867, 868-69 (Bankr. D. Mass. 1981) ("[A]lthough the Debtor signs the schedules under oath, the values listed therein are only the schedules under oath, the values listed therein are only reasonable estimates, and very often the person charged with reasonable estimates, and very often the person charged with preparing the schedules has little or no knowledge about the preparing the schedules has little or no knowledge about the value of certain types of property listed therein."). Fairly value of certain types of property listed therein."). Fairly early on, in fact, the Trustee uncovered evidence that the $149 early on, in fact, the Trustee uncovered evidence that the $149 million valuation estimate was grossly excessive. million valuation estimate was grossly excessive.  ____________________ 7We reject the contention that the bankruptcy court necessarily considered the UCC claim valueless. Since the evidence did not compel a finding that $45 million was the minimum needed to settle the fraudulent transfer claim, see supra ___ _____ note 6, some unidentified portion of the settlement sum may have reflected a reasonable discounting of the UCC claim.  15 At a hearing conducted during the chapter 11 At a hearing conducted during the chapter 11 proceedings, Healthco personnel pegged the likely collateral proceedings, Healthco personnel pegged the likely collateral liquidation value at between $33 and 66 million, which quite liquidation value at between $33 and 66 million, which quite accurately presaged the $50-60 million ultimately generated in accurately presaged the $50-60 million ultimately generated in sale proceeds. See In re Tennessee Chem. Co., 143 B.R. 468, 475 sale proceeds. See In re Tennessee Chem. Co., 143 B.R. 468, 475 ___ _________________________ (Bankr. E.D. Tenn. 1992) ("[T]he usual assumption [is] that going (Bankr. E.D. Tenn. 1992) ("[T]he usual assumption [is] that going concern value is greater than forced sale, liquidation, or concern value is greater than forced sale, liquidation, or salvage value."). Furthermore, for some time Healthco had salvage value."). Furthermore, for some time Healthco had utilized a deficient inventory control system which may well have utilized a deficient inventory control system which may well have caused gross overstatements in its 1993 inventories. caused gross overstatements in its 1993 inventories. Yet more importantly, however, Healthco was the largest Yet more importantly, however, Healthco was the largest distributor of dental supplies in the United States, with distributor of dental supplies in the United States, with extensive worldwide markets. Its huge market share and the extensive worldwide markets. Its huge market share and the necessity that its inventories virtually be "dumped" on the necessity that its inventories virtually be "dumped" on the market reasonably could be expected to cause significantly market reasonably could be expected to cause significantly depressed prices. Moreover, many Healthco accounts receivable depressed prices. Moreover, many Healthco accounts receivable were in serious dispute and unlikely to attract substantial were in serious dispute and unlikely to attract substantial offers from third parties. See, e.g., Brown v. Riley & Power offers from third parties. See, e.g., Brown v. Riley & Power ___ ____ _____ ______________ Mgt., Inc. (In re Omni Mech. Contractors, Inc.), 114 B.R. 518, Mgt., Inc. (In re Omni Mech. Contractors, Inc.), 114 B.R. 518, __________ ___________________________________ 522 (Bankr. E.D. Tenn. 1990) ("The value of accounts receivable 522 (Bankr. E.D. Tenn. 1990) ("The value of accounts receivable may be discounted for uncollectible and disputed debts."). Hicks may be discounted for uncollectible and disputed debts."). Hicks Musecitesnorecordevidencewhichwouldunderminetheseconsiderations.8 Musecitesnorecordevidencewhichwouldunderminetheseconsiderations.  ____________________ 8As the Healthco collateral liquidation was exceptional in these important respects, the Trustee supportably concluded that the decision by the Bank Group not to obtain a liquidation-value appraisal prior to its collateral liquidation was not unreasonable, or at the very least that the trier of fact at trial could have found it excusable. 16 Finally, the Trustee reasonably concluded that even if Finally, the Trustee reasonably concluded that even if the sale proceeds obtained by the Bank Group were shown to have the sale proceeds obtained by the Bank Group were shown to have been low, it was most unlikely that it could have been been low, it was most unlikely that it could have been demonstrated that the collateral liquidation had been conducted demonstrated that the collateral liquidation had been conducted in a commercially unreasonable manner, given that it had begun in in a commercially unreasonable manner, given that it had begun in 1993 on terms and conditions approved by the bankruptcy court. 1993 on terms and conditions approved by the bankruptcy court. __ _____ ___ __________ ________ __ ___ __________ _____ Although close bankruptcy court oversight did not necessarily Although close bankruptcy court oversight did not necessarily rule out a claim that the Bank Group unilaterally and rule out a claim that the Bank Group unilaterally and "unreasonably" exceeded or disregarded the terms and conditions "unreasonably" exceeded or disregarded the terms and conditions of the collateral liquidation, Hicks Muse cites no record of the collateral liquidation, Hicks Muse cites no record evidence that the Bank Group did so. Accordingly, we conclude evidence that the Bank Group did so. Accordingly, we conclude that the "best interests" factor favored the settlement. that the "best interests" factor favored the settlement. 2. Creditor Views 2. Creditor Views ______________ The unsecured creditors committee strongly supported the proposed settlement, as did the overwhelming majority of individual unsecured creditors. See Lee Way Holding Co., 120 ___ ____________________ B.R. at 904 (noting importance of creditors committee support for settlement). The only objections came from some noncreditors and nonsettling creditors who were codefendants in the adversary proceeding. Hicks Muse counters that creditors committee support for the original settlement proposal must be discounted because the settlement underwent modification before gaining bankruptcy court approval. Be that as it may, there is no indication that any creditor withdrew its consent based on the de minimis __ _______ modifications subsequently made by the bankruptcy court, none of whichdetracted from the overall reasonableness of the compromise. 17 3. The Trustee's Competence and Experience 3. The Trustee's Competence and Experience _______________________________________ Other than by implication, through reliance on the Trustee's reasonable decision not to review the thirty cartons of individual invoices, see supra Section II.B.1., Hicks Muse has ___ _____ not questioned the Trustee's professional competence or experience. Absent such a challenge, this factor provided further support for the settlement. See Hill v. Burdick (In re ___ ____ _______ _____ Moorhead Corp.), 208 B.R. 87, 89 (B.A.P. 1st Cir. 1997). ______________ We therefore conclude that Hicks Muse has not demonstrated a manifest abuse of discretion by the bankruptcy court. C. Other Settlement Terms C. Other Settlement Terms ______________________ 1. Assignment Clause 1. Assignment Clause _________________ Next, Hicks Muse contests a settlement modification which deferred any determination regarding the enforceability of certain causes of action against nonsettling defendants, including Hicks Muse, which the Bank Group assigned to the Trustee. Hicks Muse contends that the bankruptcy court had no choice but to strike this modification because it lacked the power to approve the assignment. See Caplin v. Marine Midland ___ ______ ______________ Grace Trust Co. of N.Y., 406 U.S. 416, 434 (1972) (holding that ________________________ trustee lacked standing to sue in behalf of individual creditors of estate); Williams v. California First Bank, 859 F.2d 664, 666- ________ _____________________ 67 (9th Cir. 1988) (applying Caplin ban even though creditor ______ purportedly assigned its claim to trustee). We need not address the Caplin question on which the ______ 18 Hicks Muse contention is predicated. Unlike a settlement agreement wherein the estate abandons an enforceable right, the assignment by the Bank Group conferred a benefit upon the chapter 7 estate. As the bankruptcy court acted well within its discretion in determining that the benefit conferred by the settlement served the "best interests" of the chapter 7 estate without regard to whether the Trustee realized additional benefit from the subject assignment, nothing more was required.9 2. Potential Contribution Claims 2. Potential Contribution Claims _____________________________ Finally, Hicks Muse faults the bankruptcy court finding that the Trustee and the Bank Group negotiated the settlement in "good faith." It characterizes the finding as immaterial to the Rule 9019(a) "best interests of the estate  standard and worries that the Bank Group may misuse the finding should Hicks Muse later seek contribution, since state law normally bars nonsettling defendants from asserting claims for  ____________________ 9Hicks Muse cites no apposite authority for its view that the bankruptcy court had to determine the enforceability vel non ___ ___ of the assignment before approving the settlement agreement under Rule 9019(a), particularly since the Caplin-Williams issue ______ ________ remained unripe for adjudication unless and until the Trustee were to assert an assigned claim against Hicks Muse. Furthermore, though we need not resolve the matter, it seems unlikely that Hicks Muse could demonstrate cognizable injury. The Bank Group (and its putative assignee) would have had to assert in the adversary proceeding, see Fed. R. Bankr. P. 7013 ___ whatever LBO-related claims it held against Hicks Muse. Whereas the Trustee notes that he elected not to assert any derivative claim against Hicks Muse at trial in the adversary proceeding. See Mai Systs. Corp. v. C.U. Techs., Inc. (In re Mai ___ ________________ _________________ _________ Systs. Corp.), 178 B.R. 50, 55 (Bankr. D. Del. 1995) (res _____________ ___ judicata normally bars subsequent litigation of claim which could ________ have been litigated in earlier contested matter or adversary proceeding). 19 contribution against codefendants who have settled with the plaintiff in "good faith." See, e.g., Mass. Gen. Laws Ann. ch. ___ ____ 231B, 4 (Contribution Among Tortfeasors Act). The district court attempted to accommodate the Hicks Muse concern by amending the settlement order so as to reserve the question whether the bankruptcy court's "good faith" finding would be entitled to preclusive effect in any subsequent state- law contribution action. Although we concur in the district court's action, we think Hicks Muse was entitled to a determination that the interpretation feared by Hicks Muse is precluded by the settlement order. The "best interests" standard under Bankruptcy Rule 9019 contemplates a determination by the bankruptcy court as to whether the proposed settlement was negotiated in good faith. See, e.g., In re Kuhns, 101 B.R. 243, 246-47 (Bankr. D. Mont. ___ ____ ____________ 1989) (disapproving "bad faith" settlement). Although the "good faith" finding by the bankruptcy court below was expressed in general terms, without mentioning contribution, elsewhere the court explicitly provided that the legal effect of the settlement order on contribution claims was to be governed by "[n]onbankruptcy law." Moreover, there is considerable question whether the bankruptcy court possessed the power to make a "good faith" finding preempting future contribution claims by nonsettling parties in these circumstances. Compare, e.g., Feld v. Zale _______ ____ ____ ____ Corp. (In re Zale Corp.), 62 F.3d 746, 752-54 (5th Cir. 1995) _____ ___________________ 20 (holding that bankruptcy court approving settlement lacked jurisdiction to resolve claims between nondebtors), with Munford ____ _______ v. Munford, Inc. (In re Munford, Inc.), 97 F.3d 449, 455 (11th _____________ ____________________ Cir. 1996) (holding that Bankruptcy Code 105 may empower bankruptcy court to bar future contribution claims by nonsettling defendants). In all events, since the Trustee did not request extraordinary equitable relief under Bankruptcy Code 105, cf. ___ supra Section II.C.1 (bankruptcy court need not determine _____ enforceability of settlement terms which pose no detriment to chapter 7 estate), we need not resolve this question. Absent any clear indication that future contribution claims were foreclosed, we conclude that the bankruptcy court discussed "good faith" simply as another factor in its "best interests" analysis, see In ___ __ re Kuhns, 101 B.R. at 246-47, rather than with a view to barring ________ or otherwise affecting future contribution claims. Accordingly, should Hicks Muse subsequently assert a state-law contribution claim against the Bank Group, it is to be governed by the applicable state law. If the applicable state law were to comport with the "good faith" standard under Bankruptcy Rule 9019, the Bank Group might prevail on its contention that the settlement order collaterally estops Hicks Muse from relitigating the factual issue as to whether the settlement between the Trustee and the Bankruptcy Group was negotiated in good faith. As there may be no necessary equivalence between Bankruptcy Rule 9019 and applicable nonbankruptcy contribution law regarding the governing "good 21 faith" standard, we venture no opinion. Affirmed. Affirmed. ________ 22